Edward S. Zusman (SBN 154366)
Kevin K. Eng (SBN 209036)
MARKUN ZUSMAN FRENIERE COMPTON LLP
465 California Street, Suite 500
San Francisco, CA 94104
Telephone: (415) 438-4515
Facsimile: (415) 434-4505

Attorneys for Plaintiffs
(*additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ITALIAN COLORS RESTAURANT, ALAN CARLSON, STONECREST GAS & WASH, SALAM RAZUKI, LAURELWOOD CLEANERS, LLC, JONATHAN EBRAHIMIAN, LEON'S TRANSMISSION SERVICE, INC., VINCENT ARCHER, FAMILY LIFE CORPORATION d/b/a FAMILY GRAPHICS, TOSHIO CHINO, <br><br> Plaintiffs, <br><br> v. <br><br> KAMALA D. HARRIS, in her official capacity as Attorney General of the State of California, <br><br> Defendant. | Case No.: 2:14-cv-00604-MCE-DAD <br><br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br><br> Date: December 4, 2014 <br> Time: 2:00 p.m. <br> Courtroom: 7, 14th Floor <br> Hon. Morrison C. England, Jr. |

The Attorney General does not deny that California's no-surcharge law permits a merchant to charge two different prices for a product depending on how the customer pays: one price for using cash (say, $100) and another for using credit (say, $102). *See* Cal. Civ. Code § 1748.1. Nor does she deny that the law permits the merchant to tell customers that the product costs $102 and there's a $2 "discount" for paying in cash. But if the merchant instead wants to tell customers—through its labeling and signs—that the product costs $100 and there's a $2 "surcharge" for using credit, the Attorney General concedes, the merchant would violate the law.

This "virtually incomprehensible distinction between what a vendor can and cannot tell its customers offends the First Amendment"—just as New York's indistinguishable law did before Judge Rakoff declared it unconstitutional. *Expressions Hair Design v. Schneiderman*, 975 F. Supp. 2d 430, 436 (S.D.N.Y. 2013).

Rather than face Judge Rakoff's logic head on, the Attorney General ignores *Expressions* entirely (except to acknowledge that it exists, *see* AG Opp. 4). She says even less about the U.S. Supreme Court's decision in *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2663–64 (2011), which holds that the First Amendment "requires heightened scrutiny" of laws whose purpose or practical effect is to restrict speech based on content. In fact, she gives no account whatsoever of the no-surcharge statute's practical effect. She instead tries to avoid constitutional scrutiny by asserting that the statute is a "clear[]" and "straightforward" pricing regulation that "has nothing to do with speech" and "regulates only economic conduct." AG Opp. 1. But that argument ignores the distinction that gave birth to the commercial-speech doctrine in the first place. *See Va. Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748 (1976). "Pricing is a routine subject of economic regulation, but the manner in which price information is *conveyed* to buyers is quintessentially expressive, and therefore protected by the First Amendment." *Expressions*, 975 F. Supp. 2d at 445 (emphasis added). Once that bedrock distinction is understood, the Attorney General's attempt to satisfy the First Amendment hinges on the tautological argument that the law survives scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), because "there is a reasonable fit between prohibiting credit card surcharges and [the no-surcharge law's] enactment." AG Opp. 14. Suffice it to say, that isn't enough.

**ARGUMENT**

**I.    The plaintiffs have standing.**

The Attorney General begins her argument by making a drive-by attack on the plaintiffs' standing. She claims that they "have not alleged, much less demonstrated, any injury in fact" because they did not violate the statute and wait to be sued. *Id.* at 5–6. But "one does not have to await the consummation of threatened injury to obtain preventive relief," least of all in a First

Amendment challenge, where "the inquiry tilts dramatically toward a finding of standing." *Ariz. Right to Life Political Action Committee v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (quotation marks omitted). "That is so because, as the Supreme Court has recognized, a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). Thus, "[i]n an effort to avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." *Ariz. Right to Life*, 320 F.3d at 1006.

The plaintiffs have followed that approach here. Although they have "neither violated the statute nor been subject to penalties for doing so," they have been "forced to modify [their] speech and behavior to comply with the statute." *Id.* Indeed, each plaintiff wishes to take advantage of the recent antitrust settlements, which forced the major credit-card companies to drop their contractual surcharge bans. Each wishes to do so by characterizing the difference between the cash and credit price as a "surcharge" for credit, not a "discount" for cash. And each wishes to prominently and truthfully communicate that price difference to consumers, as required by the settlement. But they cannot do so because section 1748.1 prohibits them from conveying pricing information in that way. The Attorney General does not contend otherwise.

Thus, it was "not unreasonable for [the plaintiffs] to modify [their] behavior out of fear of being the object of an enforcement action." *Id.* The Attorney General "has not suggested that the legislation will not be enforced if [the plaintiffs] were to violate its provisions," nor has the statute "fallen into desuetude." *Id.* at 1006–07. "Under such circumstances, [the plaintiffs] faced a reasonable risk that it would be subject to civil penalties for violation of the statute." *Id.* at 1007; *see Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (plaintiffs have standing when the "State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise"); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (plaintiffs are "not without some reason in fearing prosecution" when "the State has not

///

disavowed any intention" of enforcing the statute against people like the plaintiffs). That is enough for standing.[1]

## II. The no-surcharge law regulates speech, not conduct.

As explained in our motion for summary judgment (at 9–12), California's no-surcharge law is a content-based speech restriction that is subject to "heightened scrutiny" under the First Amendment. *Sorrell*, 131 S. Ct. at 2664. The law's "purpose and practical effect" are to regulate how merchants *communicate* prices to consumers—not to regulate the prices themselves. *Id.* at 2663. That means, at a minimum, that the law must satisfy intermediate scrutiny under *Central Hudson*, which it cannot do.

Unable to defend the law, the Attorney General tries to escape First Amendment scrutiny altogether. She argues that she doesn't have to justify the law because it "regulates only economic conduct, namely the use of credit cards and cash in sales transactions." AG Opp. 1. But the law doesn't regulate "the use of credit cards and cash"—or any other conduct, for that matter. To the contrary, like New York's law, California's permits merchants to charge more for credit so long as they frame the price difference as a cash "discount" rather than a credit "surcharge"—that is, so long as they use the right words. For that reason, Judge Rakoff concluded that the no-surcharge law "draws the line between prohibited 'surcharges' and permissible 'discounts' based on words and labels, rather than economic realities," and so it "clearly regulates speech, not conduct." *Expressions*, 975 F. Supp. 2d at 444.

The Attorney General has no response to this, and does not bother to give one. So are we supposed to assume that California's law—which was passed around the same time, in response

---

[1] The Attorney General relies on section 1748.1's sparse enforcement history as proof that the plaintiffs lack standing. But the major credit-card companies did not rescind their contractual surcharge bans until last year, making California's no-surcharge law largely irrelevant until just recently. And other states with identical laws, like New York, have targeted merchants in recent years for "quot[ing] the price" of a product over the phone and saying that they "charge[] a fee on top of that price for using a credit card," with the New York Attorney General's Office even going so far as to give the merchants scripts for how they can communicate their prices to customers. *Expressions*, 975 F. Supp. 2d at 444 n.7 (quoting Decl. of Michael Parisi ¶ 6). California has given no reason why it couldn't (or wouldn't) enforce the same statute in the same way here. In any event, "enforcement history alone is not dispositive." *LSO, Ltd. v. Stroh*, 305 F.3d 1146, 1155 (9th Cir. 2000). The plaintiffs just have to show "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Ariz. Right to Life*, 320 F.3d at 1006 (quotation marks omitted). As explained above, they have done that here.

to the same concerted credit-card industry lobbying, to enact the same industry speech code through similar statutory language—is somehow different from New York's? If so, what makes it different? What conduct does it regulate that New York's law doesn't? Or was Judge Rakoff just wrong? And, if so, how? The Attorney General offers no answers to any of these questions.

Instead, she takes the position that the law can evade scrutiny because "[t]he text of section 1748.1 does not concern speech." AG Opp. 7. But if that were all it took to bypass the First Amendment, then state legislatures could ban all sorts of disfavored speech through clever drafting. Fortunately, that's not the law. Courts must consider a statue's "purpose and practical effect" to determine whether it restricts speech. *Sorrell*, 131 S. Ct. at 2663. And here, as detailed in our motion for summary judgment, the purpose and practical effect of the no-surcharge law are clear: the law regulates speech, and speech only.[2]

Ultimately, the Attorney General's argument boils down to the basic proposition that "states have considerable discretion" to pass laws "involving pricing and rate regulations." AG Opp. 8. (citing cases). We do not disagree. But the reason "pricing and rate regulations" generally do not implicate the First Amendment is that they actually regulate conduct—they "fix a maximum of charge to be made," for example, or otherwise regulate what is charged or paid for something. *Munn v. Illinois*, 94 U.S. 113, 125 (1876). California's law doesn't.

To see the difference, consider the authorities that the Attorney General cites (at 8) to support her argument. They involve laws that:

- prohibit unapproved "rent increases," *Yee v. City of Escondido*, 503 U.S. 519, 524 (1992);

---

[2] The Attorney General also claims that the First Amendment doesn't apply because the plaintiffs "remain[] free to discuss pricing practices" and "express themselves" in conversations with consumers. AG Opp. 9–10. But even assuming that were true (and how is a merchant to know?), the problem for the Attorney General is that the First Amendment protects more than just conversations. The way in which a merchant chooses to communicate price information to consumers—on labels, signs, advertisements, and the like—*is itself speech*. And it's not just any speech, but speech that gave rise to the commercial-speech doctrine in the first place. *See Va. Bd. of Pharmacy*, 425 U.S. at 770 (holding that speech conveying "price information" to consumers is "protected by the First Amendment"). Moreover, the fact that California claims to interpret its no-surcharge law more narrowly than New York does—to cover labeling, signs, and advertising, but not conversations—also underscores its vagueness. The statutory text does not explain this difference, and merchants should not be expected to read the Attorney General's brief in this case to learn what the law means.

- set a "maximum price for old gas," *Mobil Oil Exploration & Producing Se. Inc. v. United Distrib. Cos.*, 498 U.S. 211, 221 (1991);
- "authorize[] the fixing of minimum wages," *W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 386 (1937);
- "fix minimum and maximum . . . retail prices to be charged" for milk, *Nebbia v. New York*, 291 U.S. 502, 515 (1932); and
- ban insurance commissions "in excess of a reasonable amount," *O'Gorman & Young, Inc. v. Hartford Fire Ins. Co.*, 282 U.S. 251, 255 (1931);

Although the Attorney General asserts that these cases involved "statutes like section 1748.1," AG Opp. 8, each one of these laws—unlike California's—directly regulates the total amount charged or paid for something.

If the no-surcharge law actually regulated prices—that is, if it capped the difference between the cash and credit prices, say, or banned dual pricing outright—then it would be a price-control law of the kind the Attorney General cites. And it surely would not trigger First Amendment scrutiny. But that's not this law. In California, as in New York, merchants are free to set the credit-card price as they please; the law regulates only how they may communicate their prices to customers. That feature makes the no-surcharge law fundamentally different from every law the Attorney General cites, including the three on which she principally relies:

> (1) the California fruit-subsidy law "requiring fruit growers to subsidize generic advertising," AG Opp. 9, in *Glickman v. Wileman Brothers & Elliot, Inc.*, 521 U.S. 457 (1997);
>
> (2) the hypothetical law "setting a minimum price for alcohol products," AG Opp. 9, in *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996); and
>
> (3) the Providence tobacco-discount law "imposing higher tobacco prices," AG Opp. 9, by prohibiting "reducing prices" through "coupons and certain multi-pack discounts" in
>
> *National Ass'n of Tobacco Outlets, Inc. v. City of Providence*, 731 F.3d 71, 74 (1st Cir. 2013).

Unlike the first law, the no-surcharge law does not ask merchants to pay any additional money for anything. Unlike the second law, the no-surcharge law allows merchants to set their prices (both cash and credit) at any level they wish. And unlike the third law, the no-surcharge law allows

differential pricing (and regulates only how it is labeled). The Attorney General never confronts these critical distinctions.[3]

The Attorney General also contends that *Thrifty Oil Co. v. Superior Court*, 91 Cal. App. 4th 1070 (2d Dist. 2001), "undermines the central theme running through plaintiffs' claims, which is that any dual pricing scheme automatically involves an impermissible surcharge." AG Opp. 10. That is not our argument. Our argument is that the legality of a dual-pricing scheme (whether it "involves an impermissible surcharge," in the Attorney General's words) turns entirely on how it is *described*. Nothing in *Thrifty Oil* undermines that point.

Tellingly, the Attorney General does not rely on the one case that actually adopts her position: *Dana's Railroad Supply v. Bondi*, No. 14-cv-134 (N.D. Fla. Sept. 2, 2014) (attached as Exhibit A to AG's Opp.). She does not even mention the case in her argument section. It's not hard to see why. Like the Attorney General here, the court in that case did not cite *Expressions*, much less grapple with its reasoning or pinpoint where exactly Judge Rakoff went astray. Nor did it mention *Sorrell*. Yet because this Court must ultimately choose whether to side with *Expressions* or *Dana's Railroad* (as will any court eventually faced with this issue), it is worth considering how the court in *Dana's Railroad* analyzed the issue and reached its conclusion.

*First*, the court recognized that "the difference between a cash discount and a credit-card surcharge makes no difference in the price a customer must pay when using either cash or a card; *it is a matter of semantics, not economics*"—the same basic recognition that every judge to consider these laws has had. Op. at 2 (emphasis added); *see, e.g.*, *Expressions*, 975 F. Supp. 2d at 444 ("[The no-surcharge law] draws the line between prohibited 'surcharges' and permissible 'discounts' based on words and labels, rather than economic realities. So read, the statute clearly

---

[3] At one point the Attorney General invokes, without elaboration, "the rule of constitutional avoidance." AG Opp. 6. But that interpretive canon is appropriate only for *federal* statutes. When "interpreting a *state* statute, by sharp contrast," federal courts lack the authority to "'rewrite a state law to conform it to constitutional requirements'" and may instead give it only its "readily apparent" meaning. *Vt. Right to Life Committee, Inc. v. Sorrell*, 221 F.3d 376, 386 (2d Cir. 2000) (quoting *Am. Booksellers Ass'n, Inc.*, 484 U.S. at 397); *Boos v. Barry*, 485 U.S. 312, 330 (1988); *see Eubanks v. Wilkinson*, 937 F.2d 1118, 1125 (6th Cir. 1991) ("Federal courts lack authority and power to give a limiting, narrowing construction to a state statute."); *Hill v. City of Houston*, 789 F.2d 1103, 1112 (5th Cir. 1986) ("Federal courts . . . may not impose [their] own narrowing construction" on state law).

regulates speech, not conduct, and does so by banning disfavored expression."); *People v. Fulvio*, 517 N.Y.S.2d 1008, 1011, 1015 (N.Y. Crim. Ct. 1987) (under the no-surcharge law, "precisely the same conduct" is considered either illegal or permissible "depending only upon the *label* the individual affixes to his economic behavior, without substantive difference"; "it is not the *act* which is outlawed, but the *word* given that act"). Nevertheless, the court reasoned that the statute need survive only "rational-basis scrutiny" because it "is within the [state's] broad discretion in regulating *economic* affairs"—even though it regulates "semantics, *not economics*." Op. at 2–5 (emphasis added).[4]

*Second*, the court identified, on its own, three possible rationales for the law: (1) "ensuring that the consumer knows the facts before initially deciding to make the purchase," (2) avoiding "unpleasant surprise," and (3) "[r]equiring prices to be listed in the same way." *Id.* at 3–4. Each proposed rationale confirms that the law is about speech, not conduct. *See BellSouth v. Farris*, 542 F.3d 499, 510 (6th Cir. 2008) (explaining that something "cannot simultaneously be non-communicative" and "yet pose the risk of *communicating* a misleading message").

*Third*, the court found that "[n]one" of these possible justifications "is compelling. They may not even be persuasive." Op. at 5. Yet somehow the court concluded that the law would survive "under the commercial-speech standards imposed in cases like *Central Hudson*." Op. at 5. The court did not say why or how it came to that conclusion.

*Fourth*, the court then turned to the vagueness claim, where it was even less clear about its reasoning. This was the extent of its analysis: "I [have not] overlooked the plaintiffs' assertion that the statute is impermissibly vague. It is not. The core of the statute is clear, and it clearly applies to the plaintiffs' pricing of their products." *Id.* at 6.

Like any district court decision, *Dana's Railroad* is "not binding precedent" and should be considered only for its persuasiveness, whatever that might be. *Camreta v. Greene*, 131 S. Ct. 2020, 2033 n. 7 (2011) (quotation marks omitted). So too for *Expressions*. Our motion for

---

[4] The court deemed no-surcharge laws "no more a First Amendment violation" than major federal consumer laws. Op. at 5. But such laws often restrict commercial speech; they're constitutional because they satisfy *Central Hudson*. *See Destination Ventures, Ltd. v. FCC*, 46 F.3d 54, 57 (9th Cir. 1995); *Mark v. J.C. Christensen & Assocs.*, 2009 WL 2407700 (D. Minn. 2009).

summary judgment explained why Judge Rakoff's analysis in *Expressions* is persuasive and why this Court should follow it. Nothing in *Dana's Railroad* changes that. To the contrary: That even *Dana's Railroad* recognizes that the law regulates semantics, not economics—the inverse of the Attorney General's core position here (that the law regulates conduct, not speech)—says all there is to say about which side has the better arguments on that question. As for *Central Hudson* and vagueness, *Dana's Railroad* couldn't muster any reasoning at all, so what is there to find persuasive?

### III. The no-surcharge law fails scrutiny under *Central Hudson*.

When it comes time to try to justify the no-surcharge law under *Central Hudson*, the Attorney General's arguments evaporate on inspection. She says that the law satisfies the first *Central Hudson* prong because it "prohibits a specific form of pricing, one in which sellers state an ostensible price but then, when it comes time for purchase, add a surcharge on top of that price for credit card users." AG Br. 13 (Elsewhere, she says that the law was aimed at "misleading conduct." AG Opp. 2.) Of course, this argument undermines her core position that the law regulates conduct, not speech. As mentioned above, something "cannot simultaneously be non-communicative" and "yet pose the risk of *communicating* a misleading message" *BellSouth*, 542 F.3d at 510. Moreover, as Judge Rakoff found, there is "nothing 'inherently misleading' about a seller describing a price difference as a credit-card 'surcharge'" to consumers. *Expressions*, 975 F. Supp. 2d at 446 (quoting *In re R.M.J.*, 455 U.S. 191, 203 (1982)). And when the amount of the surcharge is prominently and truthfully disclosed, like the plaintiffs here propose, the risk of misleading consumers is almost nil.[5]

As for the remaining prongs, the state has little to say in response to our motion for summary judgment, except to point out that the legislature did what it intended to do: prohibit surcharges. *See* AG Br. 14. But the question isn't whether "there is a reasonable fit between prohibiting credit card surcharges and enactment of [a no-surcharge] provision," *id.*; it's whether

---

[5] Although the Attorney General claims that our "First Amendment claim can only be construed as a facial challenge," AG Opp. 6, the plaintiffs here are simply requesting the same relief granted by Judge Rakoff in *Expressions*. In addition, the facial/as-applied distinction breaks down in a pre-enforcement commercial-speech challenge like this one, where the *Central Hudson* inquiry is necessarily facial in nature.

there's a reasonable fit between a legitimate state interest—preventing consumer deception, not banning the surcharge label—and the scope of the speech restriction. As to that question, the answer is no: The law is far broader than necessary to serve any possible anti-deception interest (which could be addressed by a simple disclosure requirement). And yet the law is also too narrow to serve those purposes: among other things, the state exempts itself. That is nowhere near enough for *Central Hudson*.

### IV. The no-surcharge law is impermissibly vague.

The Attorney General also argues that section 1748.1 is not unconstitutionally vague. This argument is rooted entirely in her view that the law "does not trigger First Amendment review at all." AG Opp. 16. Indeed, she does not even attempt to argue that she should prevail on the vagueness claim if the law regulates speech. As with her First Amendment argument, she asserts that the statute "is a straightforward business regulation clearly apprising merchants they *may not impose* a surcharge on credit card sales but *may offer* a discount" for non-credit-card sales. AG Opp. 1. But what's the difference? Why is a $2 cash "discount" okay, but a mathematically equivalent $2 credit-card "surcharge" is verboten? Yet again, the Attorney General does not say.

Nor does the Attorney General grapple with any of the cases that have addressed the meaning of state no-surcharge laws and universally grasped their incoherence. *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 986 F. Supp. 2d 207, 2013 WL 6510737, *19–*20 (E.D.N.Y. 2013) ("No-surcharge laws are not only anti-consumer, they are arguably irrational."); *Expressions*, 975 F. Supp. 2d at 435 ("*Alice in Wonderland* has nothing on [New York's no-surcharge law]."); *Fulvio*, 517 N.Y.S.2d at 1012 (holding that the no-surcharge law, by prohibiting credit surcharges but permitting cash discounts, is "so vague, uncertain and arbitrary of enforcement as to be fatally defective"). And the Attorney General's only response to the questions we posed in our summary-judgment motion (at 16–17) is to dismiss them as "hypothetical" and "rhetorical." AG Opp. 16. But the plaintiffs' concerns aren't hypothetical or rhetorical; they are concerns that any merchant who employs (or would like to employ) a dual-pricing system must face. For example, what would the plaintiffs' labels and signs say if they were to adopt dual-pricing systems, as the law permits? How about if a customer called on the

phone and asked for their prices? What are they supposed to say? These are questions that any dual-pricing merchant will confront. Because the Attorney General cannot provide any answers, the law is unconstitutionally vague.

## CONCLUSION

This Court should enter an order granting the plaintiffs' motion for summary judgment, denying the defendant's motion for summary judgment, declaring California's no-surcharge statute unconstitutional, and permanently enjoining the Attorney General (or any other person acting in the name of the State of California) from enforcing the no-surcharge statute.

Date:   November 10, 2014                    Respectfully submitted,

*/s/ Kevin K. Eng*
EDWARD S. ZUSMAN
KEVIN K. ENG
MARKUN ZUSMAN FRENIERE & COMPTON LLP
465 California Street, 5th Floor
San Francisco, CA 94104
(415) 438-4515
keng@mzclaw.com

DEEPAK GUPTA
JONATHAN E. TAYLOR
GUPTA BECK PLLC
1735 20th Street, NW
Washington, DC 20009
(202) 888-1741
deepak@guptabeck.com

GARY B. FRIEDMAN
TRACEY KITZMAN
REBECCA QUINN
FRIEDMAN LAW GROUP LLP
270 Lafayette Street
New York, NY 10012
(212) 680-5150

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that I filed copies of the following:

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

via the Court's CM/ECF system on November 10, 2014, which will automatically serve a copy on counsel for the defendant.

Dated: November 10, 2014                                    /s/ Kevin K. Eng
                                                                                         _____
                                                                                         Kevin K. Eng