1  KAMALA D. HARRIS
   Attorney General of California
2  STEPAN A. HAYTAYAN
   Supervising Deputy Attorney General
3  ANTHONY R. HAKL, State Bar No. 197335
   Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone: (916) 322-9041
6    Fax: (916) 324-8835
     E-mail: Anthony.Hakl@doj.ca.gov
7  *Attorneys for Defendant*

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

13  | **ITALIAN COLORS RESTAURANT,** | 2:14-cv-00604-MCE-DAD |
    | **ALAN CARLSON, LAURELWOOD** | |

14  **CLEANERS, LLC, JONATHAN**  |  **DEFENDANT'S REPLY IN SUPPORT**
    **EBRAHIMIAN, FAMILY LIFE**  |  **OF MOTION FOR SUMMARY**

15  **CORPORATION d/b/a FAMILY**  |  **JUDGMENT, OR IN THE**
    **GRAPHICS, TOSHIO CHINO,**  |  **ALTERNATIVE SUMMARY**
                                 |  **ADJUDICATION, AND IN OPPOSITION**
16                   Plaintiffs, |  **TO PLAINTIFFS' MOTION FOR**
                                 |  **SUMMARY JUDGMENT**
17        v.

18                                   Date:        December 4, 2014
    **KAMALA D. HARRIS, in her official**   Time:        2:00 p.m.
19  **capacity as Attorney General of the State of**   Courtroom:   7, 14th Floor
    **California,**                  Judge:       Hon. Morrison C. England, Jr.
                                     Trial Date:  None
20                   Defendant.      Action Filed: March 5, 2014

21

22

23

24

25

26

27

28

---

Defendant's Reply in Support of Motion for Summary Judgment (2:14-cv-00604-MCE-DAD)

# TABLE OF CONTENTS

**Page**

Introduction.................................................................................................................1

Argument ....................................................................................................................1

    I.      Plaintiffs Have Failed to Meet Their Burden to Show Standing. ...........................1

    II.    Section 1748.1 Regulates Economic Conduct, Not Speech. ...................................3

    III.   Section 1748.1 Is Not Unconstitutionally Vague. ...................................................6

Conclusion ..................................................................................................................7

# TABLE OF AUTHORITIES

**Page**

**CASES**

*ACLU of Nev. v. Heller*
  378 F.3d 979 (9th Cir. 2004) ................................................................................1

*Arcilla v. Adidas Promotional Retail Operations, Inc.*
  488 F. Supp. 2d 965 (C.D. Cal. 2007) ..................................................................7

*Ariz. Right to Life Political Action Comm. v. Bayless*
  320 F.3d 1002 (9th Cir. 2003) ..............................................................................1

*Babbitt v. United Farm Workers Nat'l Union*
  442 U.S. 289 (1979) ..............................................................................................2

*Big Bear Super Market No. 3 v. INS*
  913 F.2d 754 (9th Cir. 1990) ................................................................................6

*Dana's Railroad Supply v. Bondi*
  No. 4:14cv134-RH/CAS (N.D. Fla.) ....................................................................5

*Doe v. Schwarzenegger*
  476 F. Supp. 2d 1178 (E.D. Cal. 2007) ................................................................6

*Expressions Hair Design v. Schneiderman*
  975 F. Supp. 2d 430 (S.D.N.Y. 2013) ..................................................................5

*Forbes v. Napolitano*
  236 F.3d 1009 (9th Cir. 2000) ..............................................................................6

*Lee v. Walters*
  433 F.3d 672 (9th Cir. 2005) ................................................................................6

*National Association of Tobacco Outlets, Inc. v. City of New York*
  No. 14 Civ. 00577 (S.D.N.Y., June 18, 2014), 2014 WL 2766493, at *6 ..........5

*National Association of Tobacco Outlets, Inc. v. City of Providence*
  731 F.3d 71 (1st Cir. 2013) ..................................................................................5

*Nebbia v. New York*
  291 U.S. 502 (1932) ..............................................................................................4

*O'Gorman & Young, Inc. v. Hartford Fire Ins. Co.*
  282 U.S. 251 (1930) ..............................................................................................4

*Sorrell v. IMS Health, Inc.*
  — U.S. —, 131 S. Ct. 2653 (2011) ...................................................................5, 6

1

## TABLE OF AUTHORITIES
### (continued)

Page

*Thomas v. Anchorage Equal Rights Comm'n*
220 F.3d 1134 (9th Cir. 2000) (en banc) ............................................................1, 2

*Thrifty Oil Co. v. Superior Court*
91 Cal. App. 4th 1070 (2001) .............................................................................2

*United States v. Carter*
421 F.3d 909 (9th Cir. 2005) .............................................................................3

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*
455 U.S. 489 (1982)............................................................................................6

*W. Coast Hotel Co. v. Parrish*
300 U.S. 379 (1937)............................................................................................4

*Yee v. City of Escondido*
503 U.S. 519 (1992)............................................................................................4

**STATUTES**

California Civil Code
§ 1748.1 ........................................................................................*passim*
§ 1748.1(b)................................................................................................2
§ 1748.1(e)................................................................................................3

**OTHER AUTHORITIES**

*Random House Webster's Unabridged Dictionary* 1914 (2d ed. 1997).........................3

*Webster's Third New International Dictionary* 2299 (2002) .......................................3

Defendant's Reply in Support of Motion for Summary Judgment (2:14-cv-00604-MCE-DAD)

**INTRODUCTION**

Plaintiffs present themselves to this Court as civil rights litigants.  But this is not a civil rights lawsuit.  Rather, plaintiffs are a group of business people, and this is a business case.  This is because the statute plaintiffs challenge — California Civil Code section 1748.1[1] — is an economic regulation, not a speech regulation.  As such, the First Amendment is not even implicated and section 1748.1 easily withstands rational basis scrutiny.  Nor is the law so vague that ordinary businesspersons of common intelligence have to guess at its meaning.  California's statutory prohibition against credit-card surcharges therefore does not violate the First or Fourteenth Amendment.  And this Court should deny plaintiffs' motion for summary judgment, and grant defendant's motion for summary judgment, or in the alternative summary adjudication.

**ARGUMENT**

**I.   PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN TO SHOW STANDING.**

In their attempt to show standing, plaintiffs rely heavily on the general proposition that First Amendment cases involve "unique standing considerations" that often result in a finding of standing.  *See Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003).  But standing is not automatic.  On the contrary, even in the First Amendment context plaintiffs must demonstrate an intention to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against plaintiffs.  *ACLU of Nev. v. Heller*, 378 F.3d 979, 984 (9th Cir. 2004) (quotation marks and citation omitted).  "[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement."  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).  Rather, plaintiffs must face a "genuine threat of prosecution."  *Id.*  In evaluating the genuineness of a claimed threat of prosecution, courts examine three factors: (1) "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question," (2) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings,"

---

[1] All further statutory citations are to the California Civil Code unless otherwise indicated.

1

1   and (3) "the history of past prosecution or enforcement under the challenged statute." *Id.*;

2   *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Plaintiffs have

3   failed to show that any of these factors is met here.

4       First, as to the requirement of a "concrete plan," the declarations submitted by plaintiffs fall

5   short of specifying "when, to whom, where, or under what circumstances" plaintiffs supposedly

6   pledge to violate section 1748.1. *Thomas*, 220 F.3d at 1138. Additionally, according to the

7   complaint, the basic message plaintiffs desire to convey to their customers is that using credit

8   cards "costs more." (*See, e.g.*, First. Am Compl. ¶¶ 7, 24, 32 & 37.) Section 1748.1 simply does

9   not prohibit them from communicating as much to their customers in a manner of their choosing.

10   Thus, plaintiffs have not articulated a "concrete plan" to violate section 1748.1.

11       Second, plaintiffs have not shown or even attempted to show that any prosecuting authority

12   has communicated a specific warning or threat to initiate proceedings against them.

13   Section 1748.1 gives consumers the right to bring "[a] cause of action . . . in small claims court

14   . . . or in any other appropriate court" if they think a retailer is violating the provision. Cal. Civ.

15   Code § 1748.1(b). Yet plaintiffs readily admit that has not happened here. Indeed, plaintiffs

16   broadly concede that "[n]o one has initiated legal proceedings against any of the plaintiffs under

17   California Civil Code section 1748.1" and that "[n]o one has threatened to initiate legal

18   proceedings against any of the plaintiffs under California Civil Code section 1748.1."

19   (Pls.' Response to Def.'s Statement of Undisputed Facts at 2.) These concessions alone

20   demonstrate that there is no case or controversy.

21       Third, it is undisputed that there is virtually no history of past prosecution or enforcement

22   of section 1748.1. Between them, plaintiffs and defendants have been able to identify only one

23   case involving the provision. *See Thrifty Oil Co. v. Superior Court*, 91 Cal. App. 4th 1070, 1073

24   (2001) (finding gas station's pricing system—one price for cash, another for credit cards—to be a

25   permissible discount, not an unlawful surcharge, under section 1748.1). Plaintiffs attribute this

26   dearth of history to the fact that the major credit-card companies did not rescind their *contractual*

27   surcharge bans until recently, making *laws* like section 1748.1 "largely irrelevant" until now.

28   That logic is flawed. And in any event, the events plaintiffs refer to occurred a year ago, and

2

1   plaintiffs are still unable to point to any enforcement efforts against them.  Additionally, if

2   plaintiffs ever face a cause of action under 1748.1, they would likely have standing to challenge

3   its constitutionality at that time.  But they do not have standing now.

4    For this reason alone, the Court should deny plaintiffs' motion for summary judgment, and

5   grant defendant's motion for summary judgment, or in the alternative summary adjudication.

6   **II.   SECTION 1748.1 REGULATES ECONOMIC CONDUCT, NOT SPEECH.**

7    Despite plaintiffs' efforts to make this a First Amendment case, section 1748.1 simply does

8   not regulate speech or any other expressive conduct.  Rather, the plain language of section 1748.1

9   concerns a certain kind of economic conduct in retail transactions: charging an additional cost

10  above the assigned price of an item.  A surcharge is a cost item separate from the price.  That is

11  the meaning of the noun "surcharge" as it is used in section 1748.1  A surcharge is "an additional

12  charge, tax, or cost."  *Random House Webster's Unabridged Dictionary* 1914 (2d ed. 1997).  It is

13  "a charge in excess of the usual or normal amount."  *Webster's Third New International Dict.*

14  2299 (2002).  *See United States v. Carter*, 421 F.3d 909, 911 (9th Cir. 2005) (recognizing it is

15  "common practice" for courts to consult dictionary definition to clarify word's ordinary

16  meaning).

17   To put it another way, section 1748.1 does not mean that a retailer cannot recoup its credit

18  card transaction costs by assigning prices in any number of ways.  It simply means that such a

19  cost cannot be charged separately from and in addition to the assigned price of an item.

20  As discussed in the Attorney General's opening brief, the main purpose of section 1748.1 is to

21  prevent retailers from attracting consumers to make a purchase based on an assigned price, only

22  to find at the register that the total cost is higher if the consumer uses a credit card.  That section

23  1748.1 allows for cash discounts is unsurprising because the provision is aimed at preventing this

24  kind of "bait and switch" detrimental to the customer.  *See* § 1748.1(e) ("It is the intent of the

25  Legislature to promote the effective operation of the free market and protect consumers from

26  deceptive price increases for goods and services by prohibiting credit card surcharges and

27  encouraging the availability of discounts by those retailers who wish to offer a lower price for

28  goods and services purchased by some form of payment other than credit card.").  Cash discounts,

3

1   unlike a separate surcharge added to a price, work to the benefit of the consumer (i.e., they reduce

2   total cost below the assigned price).

3         Nor does section 1748.1 instruct retailers how to assign their prices or otherwise

4   communicate pricing or cost information to their customers.  Section 1748.1 does not instruct

5   retailers on whether or how they may recoup credit card transaction costs through the prices they

6   assign.  Plaintiffs can assign prices so as to pass those costs directly to credit card users only or

7   spread them among some or all of its customers more generally, without violating section 1748.1.

8   If, in any of these possible price assignment scenarios, plaintiffs refrain from telling their

9   customers they are adding a "surcharge", it is not because the statute tells them how to use the

10  word "surcharge," although it should be noted that using the word "surcharge" to describe a cost

11  component incorporated into price (in contrast to added to the price as a separate cost item) would

12  be using the word in way that departs from its definition.

13        Plaintiffs attempt to distinguish California's law from other regulations because, according

14  to plaintiffs, section 1748.1 does not "directly regulate[] the total amount charged or paid for

15  something."  (Reply in Supp. of Pl.'s Mot. for Summ. J. & in Opp'n to Def.'s Mot, for Summ. J.

16  ("Pls.' Reply") at 6.)  But this distinction created by plaintiffs is immaterial and unsupported by

17  any authority.  Courts do not distinguish between direct and indirect regulations in this way.  The

18  Supreme Court has consistently viewed both direct regulations (i.e., those that set a maximum or

19  a minimum charge or payment) and laws regulating charges and payments indirectly as properly

20  subject to the state's police powers.  *Compare Nebbia v. New York*, 291 U.S. 502, 515 (1932)

21  (fixing minimum and maximum prices to be charged for milk) *with Yee v. City of Escondido*,

22  503 U.S. 519, 529 (1992) (upholding rent control ordinance without setting a maximum allowable

23  increase); *O'Gorman & Young, Inc. v. Hartford Fire Ins. Co.*, 282 U.S. 251, 328 (1930) (banning

24  commissions in excess of a reasonable amount without dictating a specific amount for the

25  commissions); *W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 398-99 (1937) (upholding the

26  concept of minimum wages, while allowing employers to set wages above a certain floor).

27        Next, plaintiffs' reply, like their other filings, is permeated with citations to the relatively

28  recent decision out of the Southern District of New York.  In *Expressions Hair Design v.*

4

1    *Schneiderman*, 975 F. Supp. 2d 430 (S.D.N.Y. 2013) — another First Amendment challenge

2    brought by the same counsel representing plaintiffs here — the district court struck down New

3    York's state law banning surcharges on credit card purchases.  But that decision, which is

4    currently on appeal to the Second Circuit, goes against the weight of the authority evaluating

5    similar First Amendment challenges to pricing regulations.  *See National Association of Tobacco*

6    *Outlets, Inc. v. City of Providence*, 731 F.3d 71, 77 (1st Cir. 2013); *Dana's Railroad Supply v.*

7    *Bondi*, No. 4:14cv134-RH/CAS (N.D. Fla.) (Order Granting Summ. J. filed Sep. 2, 2014, Doc.

8    no. 29); *Nat'l Ass'n. of Tobacco Outlets, Inc. v. City of New York*, No. 14 Civ. 00577 (S.D.N.Y.,

9    June 18, 2014), 2014 WL 2766493, at *6.

10        Moreover, the New York decision relies on the false premise that the "line between

11    prohibited 'surcharges' and permissible 'discounts' [is] based on words and labels, rather than

12    economic realities."  *Expressions Hair Design*, 975 F. Supp. 2d at 444.  Common sense and

13    commercial practices familiar to any consumer demonstrate that there is a straightforward

14    distinction between surcharges and discounts that has nothing to do with speech: a surcharge is

15    *added* to the assigned price (thus increasing total cost), while a discount is *deducted* from price

16    (thus reducing cost).  The difference between increasing total cost and decreasing total cost is real

17    to a customer relying on an assigned price.  The reasoning of the Southern District of New York

18    also conflicts with the California Legislature's policy determination that surcharges and discounts

19    are *not* identical.  (*See* § 1748.1(e); Decl. of Joel Tochterman, Exhs. A – F (legislative history of

20    section 1748.1).)  This distinction is sufficient to justify the Legislature's decision to regulate

21    pricing practices and to defeat plaintiffs' First Amendment challenge.

22        Finally, plaintiffs' reliance on *Sorrell v. IMS Health, Inc.*, — U.S. —, 131 S. Ct. 2653

23    (2011), the other case cited in support of their First Amendment claim, is also misplaced.

24    (Pls.' Reply at 2.).  In that case, the statute's "express purpose" was to prevent pharmaceutical

25    companies from accessing prescriber-identifying information for marketing purposes, while

26    allowing access for other types of entities.  *Id.* at 2663.  Because the marketing at issue in *Sorrell*

27    was an inherently expressive activity, unlike the economic conduct at issue here, the statute

28    directly regulating marketing implicated the First Amendment.  *Id.* at 2663-64.

5

### III. SECTION 1748.1 IS NOT UNCONSTITUTIONALLY VAGUE.

Section 1748.1 "enjoys a presumption of constitutionality."[2] *Forbes v. Napolitano*, 236 F.3d 1009, 1012 (9th Cir. 2000). In claiming that section 1748.1 is unconstitutionally vague, plaintiffs invite this Court to ignore that presumption and adopt the reasoning of a New York state court decision and two federal district courts interpreting New York State's anti-surcharge law. (Pls.' Reply at 10-11.) But those cases are inapposite. Unlike New York's anti-surcharge law, section 1748.1 involves only civil penalties. For this reason, the applicable vagueness test is "relaxed." *Big Bear Super Market No. 3 v. INS*, 913 F.2d 754, 757 (9th Cir. 1990) ("A greater degree of ambiguity will be tolerated in statutes which—like the one challenged here—merely impose civil, as opposed to criminal penalties.").

Moreover, as the Supreme Court has emphasized, "economic regulation is subject to a less strict vagueness test [than criminal statutes] because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) (footnote omitted). The Ninth Circuit has similarly stated that "when the statute regulates the conduct of businesses . . . the vagueness test is relaxed, because businesses have a greater ability to determine the meaning of legislation in advance of their conduct than do individuals." *Big Bear Super Market No. 3*, 913 F.2d at 757 (9th Cir. 1990)

Thus, the issue is whether section 1748.1 is so vague that an ordinary business person of common intelligence "must necessarily guess at its meaning." *Big Bear Super Market No. 3*, 913 F.2d at 757; *see Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965, 970 (C.D. Cal. 2007) ("Thus, the question here is essentially whether [the statute] is sufficiently

---

[2]  In the same vein, any analysis of section 1748.1 is also subject to the doctrine of constitutional avoidance. Citing a few out-of-circuit cases, plaintiffs wrongly state that the doctrine applies only when federal, as opposed to state, statutes are at issue. (Pls.' Reply at 7 n.3.) Courts in the Ninth Circuit have applied the doctrine when assessing the validity of state statutes. *See, e.g., Lee v. Walters*, 433 F.3d 672, 677 (9th Cir. 2005) (considering Oregon statute); *Doe v. Schwarzenegger*, 476 F. Supp. 2d 1178, 1181 (E.D. Cal. 2007) (considering California statute).

clear that its prohibitions would be understood by an ordinary person operating a profit-driven business." That is hardly the case here. The relevant language is simple and straightforward — it bans retailers from charging an additional fee for the use of a credit card.

### CONCLUSION

Section 1748.1 is a valid business regulation passed by the California Legislature pursuant to its police powers over economic matters. Accordingly, the Court should deny plaintiffs' motion for summary judgment, and grant defendant's motion for summary judgment, or in the alternative summary adjudication.

Dated: November 19, 2014               Respectfully Submitted,

                                       KAMALA D. HARRIS
                                       Attorney General of California
                                       STEPAN A. HAYTAYAN
                                       Supervising Deputy Attorney General


                                       /s/ Anthony R. Hakl
                                       ANTHONY R. HAKL
                                       Deputy Attorney General
                                       *Attorneys for Defendant*

SA2014115143
11598833.doc

7

# CERTIFICATE OF SERVICE

Case Name:   **Italian Colors Restaurant v.**          No.   **2:14-cv-00604-MCE-DAD**
               **Kamala D. Harris**

I hereby certify that on <u>November 19, 2014</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION, AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>November 19, 2014</u>, at Sacramento, California.

          Tracie L. Campbell
               Declarant                                      Signature

11597321.doc